IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
------------------------------------- X
EMMANUEL FREUDENTHAL,                 :
                                        Case No.
                Plaintiff,            :

        v.                            :

U.S. DEPARTMENT OF DEFENSE,           :
1155 Defense Pentagon
Washington, DC 20301-1155             :

and                                   :
                                      :
U.S. AFRICA COMMAND,                  :
Unit 29951
APO AE 09751                          :

                Defendants.           :
------------------------------------- X
```

## COMPLAINT

1.  Plaintiff Emmanuel Freudenthal ("Freudenthal") brings this action against the U.S. Department of Defense ("DOD") and U.S. Africa Command ("AFRICOM") (collectively, "Defendants") under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel Defendants' compliance with the requirements of FOIA regarding two separate requests, one submitted in July 2018 and one submitted in August 2018.[1]  As the grounds for this

---

[1] 5 U.S.C. § 552(a)(4)(B) provides in pertinent part:
   On complaint, the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo, and may examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsection (b) of this section, and the burden is on the agency to sustain its action.

relief, Freudenthal alleges as follows:

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

3. Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

4. Because Defendants have failed to comply with the applicable time-limit provisions of FOIA, Freudenthal is deemed to have exhausted his administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is entitled to judicial action enjoining Defendants from continuing to withhold department or agency records and ordering them to produce department or agency records improperly withheld.

## PARTIES

5. Freudenthal is a freelance investigative journalist living in Kenya whose work uncovers institutional corruption and crimes across Africa. He has spent the last decade investigating and reporting on gross human rights violations, torture, and corporate exploitation of natural resources in developing nations. His investigative journalism uncovering human rights violations by the Cameroonian military has been featured on BBC Africa Eye and won a Peabody Award. His stories have been published by the BBC, Le Monde, Libération, The New Humanitarian, Sydney Morning Herald, The Daily Telegraph, African Arguments, Journal de Montréal, TV5, and others.

6. DOD is a department of the executive branch of the U.S. government headquartered in Washington, DC, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1), and, as such, is subject to FOIA. DOD has possession, custody, and

control of records requested by Freudenthal under FOIA.

7. AFRICOM is a component of DOD, a department of the executive branch of the U.S. government headquartered in Washington, DC, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1), and, as such, is subject to FOIA. AFRICOM has possession, custody, and control of records requested by Freudenthal under FOIA.

## STATEMENT OF FACTS

*Background*

8. Published reports indicate that the U.S. has been providing military support to Cameroon for over a decade, including training, equipment, and other resources. See, e.g., "U.S. Relations With Cameroon," U.S. Department of State, Bureau of African Affairs, November 3, 2021, https://www.state.gov/u-s-relations-with-cameroon/ ("The Department of Defense conducts bilateral and multilateral security cooperation activities in coordination with the Cameroonian government. U.S. security assistance strengthens Cameroon's ability to contain Boko Haram and ISIS-West Africa, assists maritime security in the Gulf of Guinea, contributes to regional stability, strengthens military justice, and promotes respect for human rights.").

9. In 2017, Amnesty International issued a report that it said documented extensive human rights violations by the Cameroonian security forces; the report stated that between 2013 and 2017, 101 individuals had been held in incommunicado detention, tortured, and sometimes killed at various facilities run by Cameroonian military and intelligence services. See "Cameroon: Amnesty report reveals war crimes in fight against Boko Haram, including horrific use of torture," https://www.amnesty.org/en/latest/news/2017/07/cameroon-amnesty-report-reveals-war-crimes-in-fight-against-boko-haram-including-horrific-use-of-torture/. The Report, entitled "Cameroon's Secret Torture Chambers: Human Rights Violations and War Crimes in the

3

Fight Against Boko Haram"[2] ("Amnesty Report"), identified the Cameroon Rapid Intervention Battalion's ("BIR") headquarters near the Village of Salak as one of the primary sites where these brutal activities were carried out. See Amnesty Report at 6-7. The Amnesty Report further noted (at 7) the regular presence of U.S. military personnel at the Salak base:

> Research conducted by Amnesty International in conjunction with London-based agency Forensic Architecture also highlights the regular presence of military personnel from some of Cameroon's international military partners at the BIR's base at Salak, over the period where torture and incommunicado detention were routinely practiced. Although there is no evidence to suggest that any foreign military personnel from international partners were involved in the commission of torture, witness testimonies, analysis of photos and video gathered from social media and US military tendering documents all evidence the regular presence of US personnel at the Salak base, including some who happen to be accommodated within the camp.

10. Indeed, Cameroon's Salak military base had been referenced by the U.S. State Department as a site used to commit torture by the Cameroonian military at least since 2007. See, e.g., U.S. Department of State, "2007 Country Reports on Human Rights Practices," "Cameroon," March 11, 2008, https://2009-2017.state.gov/j/drl/rls/hrrpt/2007/100470.htm ("In late October more than 100 persons were reportedly beaten after members of the Rapid Intervention Brigade arrested them in and around Maroua, in the Far North Province. The victims were detained for several days at Salack [sic], where many of them were stripped naked, blindfolded and beaten, then held in a cell with water on its floor.").

11. After the story of U.S. personnel's proximity to, and potential knowledge of, the torture conducted at Salak broke in 2017, AFRICOM ordered an investigation into the matter. See Ryan Browne, "US military launches inquiry into torture allegations at Cameroon base," CNN Politics, updated August 7, 2017, https://amp.cnn.com/cnn/2017/08/04/politics/us-military-

---

[2] https://www.amnesty.org/en/wp-content/uploads/2021/05/AFR1765362017ENGLISH.pdf.

inquiry-torture-cameroon-base/index.html ("'I can confirm that at the request of the AFRICOM commander an inquiry is being conducting into the Cameroon torture allegations,' US Army Major Audricia Harris told CNN Friday."). Information regarding the results of AFRICOM's investigation has not yet been made public. However, on November 1, 2018, AFRICOM advised Freudenthal "I think we will be releasing the investigation mid-December.", indicating that the report would be finished in December 2018 or around that time. AFRICOM does not deny that the report exists, but the report has apparently never been released.

12. In the course of his ongoing investigative journalism regarding the torture conducted by the Cameroonian military, on July 16, 2018 and August 2, 2018 – nearly four years ago – Freudenthal submitted two FOIA requests to AFRICOM via the MuckRock.com communication platform.[3]

- The July 16, 2018 request was submitted with the subject line "Freedom of Information Act Request: USA support to Cameroon military (U.S. Africa Command)".[4] To Freudenthal's knowledge, contrary to DOD regulations, AFRICOM never assigned the July 16, 2018 request a case number.[5]

- The August 2, 2018 request was submitted with the subject line "Freedom of Information Act Request: Inquiry (U.S. Africa Command)".[6] On August 3, 2018, AFRICOM confirmed receipt of the August 2, 2018 request, assigned it U.S. Africa Command's FOIA case number 2018-132, and the new subject line "U.S. Africa Command FOIA Request 2018-32" (corrected without comment by AFRICOM on August 6, 2018 to "U.S. Africa Command FOIA Request 2018-132").

Freudenthal's requests seek documents concerning the matters noted above, and to have

---

[3] MuckRock "is a non-profit, collaborative news site that brings together journalists, researchers, activists, and regular citizens to request, analyze, and share government documents, making politics more transparent and democracies more informed." and provides an on-line platform through which public records can be requested. See https://www.muckrock.com/about/.
[4] Copy attached as Appendix "A," at 2.
[5] See DoD Freedom of Information Act (FOIA) Program, 32 CFR § 286.9(b) ("Acknowledgments of requests. DoD Components will acknowledge requests in writing and assign individualized tracking numbers. DoD Components will include these tracking numbers and any tracking numbers used by FOIA requesters in all correspondence."),
[6] Copy attached as Appendix "A," at 3.

5

AFRICOM and DOD make publicly available the outcome of AFRICOM's investigation into the allegations concerning the Cameroonian military's use of torture, in order to promote public understanding and knowledge of those activities (including AFRICOM and DOD's possible awareness of the torture conducted by the Cameroonian military).[7]

*Freudenthal's July 16, 2018 FOIA Request:*
<u>*USA support to Cameroon military (U.S. Africa Command)*</u>

13.  In his July 16, 2018 request to AFRICOM, Freudenthal asked for: "All agreement [*sic*] with Cameroon relating to defence, support to the Cameroonian military, training of the Cameroonian military and/or weapon sales to them." He noted that this was a request on behalf of a member of the media; that he was a freelance investigative reporter covering East and Central Africa, with a particular focus on business, corruption, natural resources, land and social issues; and that he had a strong likelihood of publishing news articles based on information released in response to this request, given his extensive publishing history outlined above. He noted that he looked forward to receiving AFRICOM's response within 20 business days, as the statute required. He also requested a fee waiver.[8]

14.  On August 6, 2018, Freudenthal followed-up his July 16, 2018 request, asking when he could expect a response, or whether further clarification was needed.[9] He received no

---

[7] AFRICOM, in its MuckRock.com communications with Freudenthal, sometimes appeared to confuse the July 16, 2018 and August 2, 2018 requests, as Freudenthal noted to AFRICOM. For clarity, the following discussion will rely upon which subject line AFRICOM chose to use for a particular communication with Freudenthal.

[8] An agency shall "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor . . . ." 5 U.S.C. § 552(a)(6)(A)(i). "In unusual circumstances . . . the time limits . . . may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days . . . ."

[9] Copy attached as Appendix "A," at 4.

response to that inquiry, or to subsequent inquiries on August 28, 2018; September 17, 2018; October 8, 2018; October 29, 2018; November 28, 2018; December 31, 2018; January 30, 2019; and February 26, 2019.[10]

15. Moreover, between March and December 2019, Freudenthal sent many messages inquiring as to the status of his July 16, 2018 request. He received either no responses or non-substantive ones such as:

- "The material is still under review. I've followed up for an update/estimation completion date, but have not heard back yet. I hope to have information to provide to you soon." (March 29, 2019)[11]

- "I just heard back, the outside agency is estimating having their review to us by the end of summer this year. They added that this length of time is due to high turnover in personnel as a result of PCS-ing." (June 11, 2019)[12]

- "I just asked for update; I hope to have some information to you soon." (September 11, 2019)[13]

None of the communications received by Freudenthal from AFRICOM ever indicated that any of the documents subject to his request of July 16, 2018 would be forthcoming,

16. As of the date of this filing, Defendants have not issued a determination, and Freudenthal has not received a single page of documents responsive to this request.

*Freudenthal's August 2, 2018 FOIA Request:*
*U.S. Africa Command FOIA Request 2018-132*

17. In his August 2, 2018 request to AFRICOM, Freudenthal asked for: (1) "all/any internal emails that mention the word 'Salak' since July 1, 2017"; and (2) "all documents created since July 1, 2017 that summarize the findings of the AFRICOM investigation into torture at the

---

[10] Copies attached as Appendix "A," at 5-12.
[11] Copy attached as Appendix "A," at 13.
[12] Copy attached as Appendix "A," at 14.
[13] Copy attached as Appendix "A," at 15.

7

Salak base (mentioned in this article: https://www.stripes.com/news/middleeast/2.1198/africom-investigating-if-us-troops-knew-of-torture-at-cameroonian-base-1.480283)." He noted that the requested documents would be made available to the general public; that the request was not being made for commercial purposes; and that he looked forward to receiving AFRICOM's response within 20 business days, as the statute required. He also requested a fee waiver.

18. On August 3, 2018, AFRICOM, by FOIA Specialist Kirk Schmidt, acknowledged receipt of the August 2, 2018 request but claimed the request "does not reasonably describe the records requested" and "is too broad and would impose an unreasonable burden upon the agency. Before search will begin, we ask that you give us a [sic] reasonable subjects and search terms."[14]

19. In the interest of expediting receipt of materials, the next day, on August 4, 2018, Freudenthal promptly provided the further description and specificity AFRICOM requested:

> My first request is a simple keyword search of AFRICOM's emails: all/any internal emails that mention the word "Salak" since 1st July 2017. There's one keyword search that you need to run through AFRICOM employee emails. And then send me the emails resulting from that search. This is a very common type of FOIA request and I believe it's very clear what I am requesting.
>
> Regarding my second request: all documents created since 1st July 2017 that summarize the findings of the AFRICOM investigation into torture at the Salak base mentioned in this article: https://www.stripes.com/news/middle-east/2.1198/africom-investigating-if-ustroops-knew-of-torture-at-cameroonian-base-1.480283[:]
>
> The AFRICOM commander, Gen. Thomas Waldhauser, ordered an inquiry in 2017 into Cameroon torture allegations. I am assuming that there are specific staff members of AFRICOM tasked with this inquiry and that these staff members have to report back to the AFRICOM commander. I would like their latest report to the AFRICOM commander regarding this inquiry.
>
> I hope this is clearer and I look forward to receiving the documents.[15]

20. On August 6, 2018, AFRICOM agreed "[t]he first part of your request is clear,"

---

[14] Copy attached as Appendix "A," at 16.
[15] Copy attached as Appendix "A," at 17.

but again claimed it was "so broad that it would impose an unreasonable burden upon the agency," but nevertheless stated that if Freudenthal "limited the scope . . . to specific people in this command, as opposed to everyone in U.S. Africa Command, then it would not be considered overly burdensome."[16] AFRICOM further noted that "[t]he second part of your request is already being processed for another requester but it is still not ready for release. When it is ready it will be made available on the U.S. Africa Command FOIA Reading Room. However, the [requested report] is not yet online." To Freudenthal's knowledge, the report by AFRICOM staff members to the AFRICOM commander still is not available online.

21. In response to AFRICOM's email of August 6, 2018, and in a further effort to expedite production of the requested materials, on August 8, 2018, Freudenthal agreed regarding the first part of his request to "narrow it to emails in the mailbox (i.e. to/from/cc/bcc) of Gen. Thomas D. Waldhauser for the keywords 'Salak' OR 'Cameroon' (that is if one of those keywords show up) . . . ."[17] On August 9, 2018 AFRICOM thanked Freudenthal "for narrowing the scope of [his] request to Gen Waldhauser's emails with the keywords 'Salak' OR 'Cameroon' from 1 JUL 17 to present and the Salak investigation" but advised that it did "not have an estimate for when the investigation will be ready for release."[18] Freudenthal replied later that day he was "Looking [forward] to receiving the first part of the FOIA."[19] In a further effort to expedite obtaining the requested materials, he stated in that same reply: "Regarding the second part, I'd like to clarify that I would like the latest report to the AFRICOM commander regarding this inquiry. I do not need the final report of the investigation (which might not be ready as you

---

[16] Copy attached as Appendix "A," at 18.
[17] Copy attached as Appendix "A," at 19.
[18] Copy attached as Appendix "A," at 20.
[19] Copy attached as Appendix "A," at 21.

9

point out), I would just like to have whatever the latest report, summary or update was made to Gen Waldhauser.  Is this the same request as the other one you're processing? Could you send me that document?"

22.     On September 10, 2018, after receiving no response for a month, Mr. Freudenthal followed up: "Please let me know when I can expect to receive a response, or if further clarification is needed."[20]  AFRICOM advised it "will check on the status of the email part of your request.  As for the report part of your request, it is still not ready for release.  I will keep you posted."[21]  Freudenthal responded that day, "I look forward to your reply.  I think we're now over the statutory timeframe so the sooner the better."[22]

23.     On October 10, 2018, after not hearing back for another month, Freudenthal again asked when he could expect a response.[23]  Three weeks later, on November 1, 2018, AFRICOM replied, "I apologize for not getting back to you sooner.  We are making progress.  I think we will be releasing the investigation mid-December."[24]  Freudenthal asked, later that same day, "What about part 1 of the request?  That's Gen Waldhauser's emails with the keywords 'Salak' OR 'Cameroon' from 1 JUL 17 to present."[25]

24.     On December 6, 2018, after not hearing back for another month, Freudenthal followed up again.[26]  AFRICOM advised later that day, "We now have the responsive emails. However, we still need to review them and possibly remove any exempt information and/or PII. Thank you for your patience."[27]

---

[20] Copy attached as Appendix "A," at 22.
[21] Copy attached as Appendix "A," at 23.
[22] Copy attached as Appendix "A," at 24.
[23] Copy attached as Appendix "A," at 25.
[24] Copy attached as Appendix "A," at 26.
[25] Copy attached as Appendix "A," at 27.
[26] Copy attached as Appendix "A," at 28.
[27] Copy attached as Appendix "A," at 29.

25. On January 7, 2019, after not hearing back for another month, Freudenthal followed up again.[28] When again no response was received, Freudenthal inquired once more on February 6, 2019, and AFRICOM that day stated, "the office(s) that are working on this request . . . have located and completed their initial review of material that they feel is responsive to your request. We, the FOIA Office, are currently looking through this potentially responsive material to see if any other offices or agencies need to review it prior to public release. I hope to have this process completed by the end of the week and then tasked out accordingly. I'm unsure of an estimated completion date at this time, it would be dependent on if additional review of the material is necessary."[29] On February 11, 2019, at the end of the referenced week, Freudenthal asked once more: "Would you have an estimated completion date now that you've done the review?"[30] AFRICOM later that day advised: "Unfortunately, I do not have an estimated completion date at this time. I tasked the potentially responsive information out for additional review last week to an outside agency. I have not yet heard back from them regarding their estimated completion date."[31]

26. On March 13, 2019, Freudenthal followed up yet another time. AFRICOM advised it had not yet heard back from "the office(s) I tasked for review . . . ."[32] On April 15, 2019, after not hearing back for an additional month, Freudenthal followed up again, and on April 18, 2019 AFRICOM advised: "I heard back from the office reviewing the material, they are hoping to have a response to me within two weeks. Based on their review, I was expect [*sic*] to have our final response to you within about three weeks after that. Please note that this

---

[28] Copy attached as Appendix "A," at 30.
[29] Copy attached as Appendix "A," at 31.
[30] Copy attached as Appendix "A," at 32.
[31] Copy attached as Appendix "A," at 33.
[32] Copy attached as Appendix "A," at 34.

11

additional time is required for our Legal Office to review the material prior to release, which is standard, and for the signature authority to sign off on the finalized response."[33] Freudenthal replied that day: "Looking forward to receiving the document in 5 weeks. It's been over a year, we're well beyond the statutory timeframe."[34]

27. On May 20, 2019, after the promised five-week deadline had nearly passed, Freudenthal stated: "You previously indicated that it would be completed on May 24, 2019" and asked "if further clarification is needed."[35] AFRICOM advised that day it had requested an update.[36] Following messages from Freudenthal on May 21, 2019 and May 24, 2019, AFRICOM advised later on May 24, 2019, "I still have not received an update from the outside agency(ies) I've been consulting with on this request."[37]

28. On June 26, 2019, after not hearing back for another month, Freudenthal followed up again and asked about the status of his request.[38] He did not receive a response.

29. As of the date of this filing, Defendants have not issued a determination, and Freudenthal has not received a single page of documents responsive to this request.

*Administrative Appeals to AFRICOM of Both Requests*

30. Freudenthal had given AFRICOM every opportunity to comply with its legal requirements but AFRICOM had not done so, and his extraordinary patience and hope of reaching a resolution of the matters was exhausted. Therefore, on January 13, 2020, Freudenthal notified AFRICOM that AFRICOM's ongoing failure to provide a substantive determination of

---

[33] Copy attached as Appendix "A," at 35.
[34] Copy attached as Appendix "A," at 36.
[35] Copy attached as Appendix "A," at 37.
[36] Copy attached as Appendix "A," at 38.
[37] Copy attached as Appendix "A," at 39.
[38] Copy attached as Appendix "A," at 40.

his July 16, 2018 and August 2, 2018 requests constituted constructive denial of those requests; Freudenthal therefore initiated separate administrative appeals regarding both of his requests to AFRICOM.[39]

31. Freudenthal's January 13, 2020 appeal regarding his July 16, 2018 request stated:

> This is an appeal under the Freedom of Information Act. On July 16, 2018, I submitted the attached request under the Freedom of Information Act. Via a letter dated February 27, 2019, the agency claimed that it had previously acknowledged receipt of this request on August 3, 2018 and had assigned it Request No. 2018-132. We have included a copy of that communication, and, as you will see, that letter was related to another request. For this particular request, as of this writing, the request has not been given a proper tracking number nor a final determination nor have I been furnished an estimated completion date. Far more than twenty working days have elapsed without a substantive determination. I am appealing the constructive denial of my request. I ask for a determination requiring that the agency respond to my request, provide the documents, or outline reasons that they are exempt.[40]

32. Freudenthal received no response to the appeal of his July 16, 2018 request.

33. Freudenthal's January 13, 2020 appeal regarding his August 2, 2018 request stated:

> This is an appeal under the Freedom of Information Act. On August 2, 2018, I submitted the attached request under the Freedom of Information Act. By an email dated August 3, 2018, the agency acknowledged receipt of this request and assigned it Request No. 2018-132. As of this writing, the request has not been given a final determination nor have I been furnished an estimated completion date for this request. Far more than twenty working days have elapsed without a substantive determination. I am appealing the constructive denial of my request. I ask for a determination requiring that the agency respond to my request, provide the documents, or outline reasons that they are exempt.[41]

---

[39] See DoD Freedom of Information Act (FOIA) Program, 32 CFR § 286.11(a) ("A requester may appeal any adverse determinations to the DOD component's appellate authority."). An agency shall "make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal." "[T]he agency may make one request to the requester for information and toll the 20-day period while it is awaiting such information that it has reasonably requested from the requester . . . ." "In unusual circumstances . . . the time limits . . . may be extended by written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days . . . ." 5 U.S.C. § 552(a)(6)(A)(i).
[40] Copy attached as Appendix "A," at 41.
[41] Copy attached as Appendix "A," at 42.

Using the MuckRock system, Freudenthal also submitted a "FOIA APPEAL" Letter to AFRICOM's FOIA Liaison Officer.[42]

34. Freudenthal never received a response from AFRICOM to either his January 13, 2020 message or the FOIA APPEAL Letter regarding his August 2, 2018 request. On February 28, 2020, after not hearing back for another month and a half, Freudenthal asked AFRICOM: "Could you urgently update me on the status of this FOIA request and of the appeal?"[43] On June 2, 2021, AFRICOM FOIA stated: "As this request has been appealed, it is no longer under our purview. If you would like a status update please contact the DoD Appeals Office."[44] Then, on August 19, 2021 -- more than a year and a half after the FOIA APPEAL Letter was submitted -- AFRICOM's FOIA Appeals Team advised Freudenthal that the appeal of FOIA Case No. 2018-132 was assigned reference number 21-AC-00061-A1, and noted: "Due to an extremely heavy FOIA workload, we are unable to complete your appeal within the statutory time requirement."[45]

*Additional Efforts by Freudenthal*

35. <u>AFRICOM Media Operations</u>: In addition to the foregoing, Freudenthal attempted to facilitate his FOIA requests in numerous other ways. These efforts, too, have been unsuccessful. On August 4, 2020, Freudenthal emailed U.S. Africa Command Media Relations (as directed at https://www.africom.mil/pressrelease/31052/africa-endeavor-2018-senior-leader-and-communications-symposium-commences), with the subject "AFRICOM report on Salak."[46] Freudenthal identified himself as a freelance journalist and provided his credentials. He

---

[42] Copy attached as Appendix "A," at 43-46.
[43] Copy attached as Appendix "A," at 47.
[44] Copy attached as Appendix "A," at 48.
[45] Copy attached as Appendix "A," at 49.
[46] Copy attached as Appendix "A," at 50.

14

inquired, "I would like to know when the report commissioned in 2017 by AFRICOM into torture in Salak (Cameroon) has been finalized. If it's not finished yet, then when will be it?" The AFRICOM Media Operation Branch Chief Kelly M. Cahalan responded that day, "I will do some research here and get back to you."[47] On August 11, 2020, having not heard back, Freudenthal inquired: "Any luck with your research?"[48] AFRICOM Media Operations responded that day: "I don't have anything for you yet. I'll get back to you as soon as I do."[49] That was the last Freudenthal heard from AFRICOM Media Operations.

36.  Office of the Secretary of Defense ("OSD") FOIA Liaison:  Also, on August 6, 2020, Freudenthal emailed Melissa S. Walker, OSD FOIA Liaison, with the subject "AFRICOM FOIA update 2018-132," stating: "I would like to get an update regarding my FOIA request filed on August 2, 2018 with case number 2018-132. Your colleagues at AFRICOM are not responding to me, even after I appealed the constructive denial of my request."[50] The OSD FOIA Liaison never responded. Freudenthal also called the OSD FOIA Liaison several times; the phone was never answered, rather, his calls went straight to voicemail every time.

37.  Senior DOD FOIA/Appeals Directors/Administrators:  With all of these steps having produced no progress and no substantive response to his requests, in a final effort to resolve this matter without court intervention, on April 5, 2021, Freudenthal reached out directly to the most senior DOD FOIA/Appeal directors/administrators, regarding the constructive denial of his two requests in a 13-page single-spaced letter plus exhibits ("April 5, 2021 Letter to DOD") from counsel addressed to (1) Thomas M. Muir, Interim Director,

---

[47] Copy attached as Appendix "A," at 51.
[48] Copy attached as Appendix "A," at 52.
[49] Copy attached as Appendix "A," at 53.
[50] Copy attached as Appendix "A," at 54.

Administration and Management, Chief FOIA Officer, Office of Freedom of Information, U.S. Department of Defense, 1155 Defense Pentagon, Washington, DC 20301-1155, and (2) Director of Administration, Office of the Secretary of Defense, OSD/Joint Staff Freedom of Information, ATTN: Appeals Office, 1155 Defense Pentagon, Washington, D.C. 20301-1155. No response whatsoever was received. Having subsequently learned that a permanent Director, Michael B. Donley, had thereafter been appointed, on September 24, 2021, Freudenthal followed up the April 5, 2021 Letter to DOD with a letter to Director Donley ("September 24, 2021 Letter to DOD"), referencing and enclosing the April 5, 2021 Letter to DOD and exhibits.[51] Again, no response was received.

38. As of the date of this Complaint, Defendants have failed to (a) notify Freudenthal of any determination regarding his FOIA requests, including the scope of any responsive records Defendants intend to produce and the deadline for the production, or the reasons for withholding any of the requested records; (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production; or (c) issue a ruling on his appeals to AFRICOM FOIA Appeals or his reaching out to the DOD and other entities as detailed above. These failures constitute a further constructive denial of Freudenthal's requests.

39. Because of Defendants' long-standing failure to respond to Freudenthal's FOIA requests and appeals within the time periods required by law, Freudenthal has thoroughly exhausted his administrative remedies and seeks immediate judicial review.[52]

---

[51] Copy attached hereto at Appendix "B" is the September 24, 2021 Letter to DOD, referencing and enclosing the April 5, 2021 Letter to DOD.
[52] "Any person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of this

## COUNT I
## Violation of FOIA, 5 U.S.C. § 552
## Failure to Conduct Adequate Searches for Responsive Records

40. Freudenthal repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

41. Freudenthal properly requested records within the possession, custody, and control of Defendants.

42. Defendants are agencies and components of agencies subject to FOIA and must therefore make reasonable efforts to search for requested records.

43. Defendants have failed to promptly review agency records for the purpose of locating those records that are responsive to Freudenthal's FOIA requests.

44. Defendants' failure to conduct adequate searches for responsive records violates FOIA.

45. Freudenthal is therefore entitled to injunctive and declaratory relief requiring Defendants to promptly make reasonable efforts to search for records responsive to Freudenthal's FOIA requests.

## COUNT II
## Violation of FOIA, 5 U.S.C. § 552
## Wrongful Withholding of Non-Exempt Responsive Records

46. Freudenthal repeats the allegations in the foregoing paragraphs and incorporates them as though fully set forth herein.

---

paragraph. If the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records. . . . For purposes of this subparagraph, the term "exceptional circumstances" does not include a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C).

17

47.     Freudenthal properly requested records within the possession, custody, and control of Defendants that are not exempt from disclosure through FOIA.

48.     Defendants are agencies and components of agencies subject to FOIA and must therefore release in response to a FOIA request any non-exempt records and provide a lawful reason for withholding any materials.

49.     Defendants are wrongfully withholding non-exempt agency records requested by Freudenthal by failing to produce non-exempt records responsive to his FOIA requests.

50.     Defendants are wrongfully withholding non-exempt agency records requested by Freudenthal by failing to segregate exempt information from otherwise non-exempt records responsive to his FOIA requests.

51.     Defendants' failure to provide all non-exempt responsive records violates FOIA.

52.     Freudenthal is therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to his FOIA requests and indexes justifying the withholding of any responsive records withheld under claim of exemption.

## REQUESTED RELIEF

WHEREFORE, Freudenthal respectfully requests the Court to:

(1) Order Defendants to conduct a search or searches reasonably calculated to uncover all records responsive to Freudenthal's FOIA requests, as modified, and to produce, within twenty days of the Court's order, any and all non-exempt records responsive to Freudenthal's FOIA requests, including "Vaughn indexes" describing each document or portion thereof withheld and providing a detailed justification of the grounds for non-disclosure of any responsive records withheld under claim of exemption;

(2) Issue a declaration that Freudenthal is entitled to disclosure of non-exempt documents subject to his FOIA requests, as modified;

(3) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Freudenthal's FOIA requests, as modified;

(4) Award Freudenthal the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) Grant Freudenthal such other relief as the Court deems just and proper.

Dated: New York, New York
June 24, 2022

Respectfully submitted,

*/s/ Lawrence E. Savell*
Lawrence E. Savell
D.C. Bar No. NY0480

Thomas E. Riley
D.C. Bar No. NY0162
Herbert Smith Freehills New York LLP
450 Lexington Avenue, 14th floor
New York, NY 10017
T  +1 917 542 7600
F  +1 917 542 7601
lawrence.savell@hsf.com
thomas.riley@hsf.com

*Counsel for Plaintiff Emmanuel Freudenthal*